## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2016, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Linda Wells,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 9, 2016<br><br>Court of Appeals Case No.<br>49A05-1601-CR-51<br><br>Appeal from the Marion Superior Court<br><br>The Honorable William Nelson, Judge<br><br>Trial Court Cause No.<br>49G18-1408-F6-41544 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Linda Wells was convicted of Class A misdemeanor criminal mischief for setting a scooter on fire. She now appeals, arguing that the evidence is insufficient to show that she is the one who set the scooter on fire. Finding that a reasonable inference from the evidence is that Wells started the fire, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the judgment show that in August 2014, Wells asked Dana Jones, an acquaintance, to fix her scooter. Jones agreed, so Wells brought her scooter over to his house. Jones locked Wells's scooter next to his scooter in front of the house.

[3] Before Jones could start to work on Wells's scooter, it was stolen from Jones's house. Jones's scooter was not stolen because, according to Jones, he had an alarm and a special cable lock. Jones called Wells and told her that her scooter had been stolen and to call the police to make a report. Wells later called Jones and told him that he had to pay for her scooter.

[4] Wells went to Yolanda Cox's house on August 6. Cox was friends with both Jones and Wells. Wells was upset about her scooter being stolen from Jones's house. During the early-morning hours of August 7, Wells and Cox walked to Jones's house to talk to him about it. Jones was awakened by pounding on his front door. Jones looked out his front door and saw Cox standing there. Jones

saw movement behind Cox. Wells was standing by Jones's scooter. "[A]ll of a sudden" Wells kicked over Jones's scooter and poured gasoline from a gas can onto it. Tr. p. 26. When Jones opened the front door, he heard a "whoosh" and saw his scooter go up in flames. *Id.* Cox was still standing at Jones's front door when the scooter went up in flames. *Id.* at 28. According to Jones, he and Cox were blown back by the force of the fire. By the time Jones got outside, Wells was gone. Jones's scooter was "totaled." *Id.* at 29.

[5] The Indianapolis Fire Department was on another run a couple houses down when they heard a "whoof" and then saw the scooter on fire. *Id.* at 5. They put out the fire and called the police. When the police arrived, they spoke to Cox, who was still on the scene, and Jones. An investigator with the fire department determined that the fire was caused by flammable liquid and that there were two ignition points. *Id.* at 53-57. An arson detective later interviewed Wells. Although Wells admitted kicking over Jones's scooter while Cox was still standing on Jones's porch and then pouring gasoline on it, she denied setting it on fire. Ex. 9. In other words, Wells admitted that she "did everything besides strike a match." *Id.* Wells told the arson detective that Cox started the fire and that Cox should go to jail. *Id.*

[6] The State charged Wells with Level 6 felony arson and Class A misdemeanor criminal mischief. At the bench trial, the State presented evidence that Jones paid $981.11 for his scooter about six months before this incident. *See* Ex. 7 & 7a. At the close of the State's case in chief, the trial court granted Wells's motion to dismiss the arson charge because the charging information for arson

listed the wrong date. Tr. p. 70. The trial court ultimately found Wells guilty of Class A misdemeanor criminal mischief.

[7] Wells now appeals.

# Discussion and Decision

[8] Wells contends that the evidence is insufficient to support her conviction for Class A misdemeanor criminal mischief. In reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007); *see also McElfresh v. State*, 51 N.E.3d 103, 111 (Ind. 2016) ("[T]he rule is well settled that in reviewing the sufficiency of the evidence to sustain a conviction, this court will consider only that evidence which is most favorable to the state." (quotation omitted)). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Drane*, 867 N.E.2d at 146. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* at 146-47. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.* at 147. In addition, a conviction may be based purely on circumstantial evidence if that evidence supports a reasonable inference of guilt. *Willis v. State*, 27 N.E.3d 1065, 1067 (Ind. 2015); *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

Presence at the crime scene when combined with other facts and circumstances—such as the defendant's course of conduct before, during, and after the offense—may raise a reasonable inference of guilt. *Maul*, 731 N.E.2d at 439.

[9] In order to convict Wells of Class A misdemeanor criminal mischief as charged here, the State had to prove that Wells recklessly, knowingly, or intentionally damaged or defaced Jones's scooter without his consent, resulting in a pecuniary loss of at least $750 but less than $50,000. Ind. Code § 35-43-1-2(a); Appellant's App. p. 19. Wells argues that the evidence is insufficient to prove that she is the one who set Jones's scooter on fire.

[10] The evidence shows that Wells was upset when her scooter was stolen from Jones's house. Wells called Jones and told him that he had to pay for it. Wells and Cox also walked to Jones's house to talk to him about Wells's scooter being stolen. While there, Wells kicked over Jones's scooter and poured gasoline on it. Although no one testified at trial that they saw Wells set Jones's scooter on fire, Cox was still standing at Jones's front door when the scooter went up in flames, causing both Jones and Cox to be blown back. Tr. p. 28. Wells then quickly left the scene while Cox stayed and spoke with firefighters and police. A reasonable inference from this evidence is that Wells set Jones's scooter on fire, which caused at least $750 in pecuniary loss. Wells's arguments, such as that Cox had a lighter on her, are merely requests for us to reweigh the

evidence. We therefore affirm Wells's conviction for Class A misdemeanor criminal mischief.[1]

[11] Affirmed.

Baker, J., and Najam, J., concur.

---

[1] In light of our conclusion that the evidence is sufficient to show that Wells set Jones's scooter on fire, we do not address Wells's alternate argument that in the event we find that the evidence is only sufficient to show that Wells kicked over and poured gasoline on Jones's scooter (but did not set it on fire), the evidence does not support her conviction as a Class A misdemeanor (which requires at least $750 in pecuniary loss) because it was the fire—and not the toppling of the scooter or pouring gasoline on it—that caused that much damage.