## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2016, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antonio West,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 4, 2016

Court of Appeals Case No.
49A04-1603-CR-578

Appeal from the Marion Superior Court

The Honorable Linda Brown, Judge

Trial Court Cause No.
49G10-1509-CM-33910

**Bailey, Judge.**

# Case Summary

[1] Following a bench trial, Antonio West ("West") was convicted of Resisting Law Enforcement, as a Class A misdemeanor.[1] West appeals, raising the sole issue of whether the evidence is sufficient to support his conviction. We affirm.

# Facts and Procedural History

[2] On September 22, 2015, Officer Kevin Jennings ("Officer Jennings") of the Indianapolis Metropolitan Police Department ("IMPD") was entering his patrol vehicle when a citizen approached him. The citizen, who was never identified, said "Hey, do you see the gentleman across the street beating a woman[?] He is wearing a blue coat and a white hat[.]" (Tr. at 52.) When Officer Jennings looked across the street, he saw a woman on the ground. He heard yelling. He also observed a man, later identified as West, walking away from the woman. West was wearing a blue top and a white hat.

[3] To approach West, Officer Jennings drove across the street and pulled into a nearby gas station. West soon saw Officer Jennings and began running. Officer Jennings drove out of the gas station, following West. Officer Jennings saw West enter the passenger side of a vehicle and then saw the vehicle began to drive away. With his patrol vehicle's lights and siren activated, Officer Jennings followed the vehicle for about a block and a half. The vehicle then

---

[1] Ind. Code § 35-44.1-3-1(a)(3).

stopped, and West jumped out and began running. Officer Jennings exited his vehicle and pursued West. When approximately twenty yards behind West, Officer Jennings yelled, "Stop[,] Police." (Tr. at 58.) West continued to run. Additional IMPD officers responded to the scene and eventually arrested West.

[4] On February 23, 2016, West was brought to trial[2] on a charge of resisting law enforcement. Following the bench trial, West was convicted. He now appeals.

## Discussion and Decision

[5] When reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor assess witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from that evidence. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We must affirm the conviction if there is "substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015).

[6] To convict West of resisting law enforcement beyond a reasonable doubt, the State had to prove that West knowingly fled from Officer Jennings after he had, by visible or audible means, identified himself and ordered West to stop. I.C. §

---

[2] An earlier jury trial on January 25, 2016 resulted in a mistrial.

35-44.1-3-1(a)(3). Additionally, the Indiana Supreme Court has held that the State must also prove that the order to stop was lawful. *Gaddie v. State*, 10 N.E.3d 1249, 1255-56 (Ind. 2014). This is so because a conviction of resisting law enforcement, absent a lawful order to stop, would "undermine longstanding search and seizure precedent that establishes the principle that an individual has a right to ignore police and go about his business." *Id.* at 1254. Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Ind. Const. art. 1, § 11.

Here, West's sole contention is that the State failed to prove that Officer Jennings's order to stop was lawful under constitutional principles. Thus, West contends, there is insufficient evidence to support his conviction of resisting law enforcement.

## The Fourth Amendment

Under the Fourth Amendment, at minimum, the government's seizure of a citizen must rest on specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot. *Gaddie*, 10 N.E.3d at 1253 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Determinations of reasonable suspicion are made based upon the totality of the circumstances. *Platt v. State*, 589 N.E.2d 222, 226 (Ind. 1992) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)). Given the totality of the circumstances, "officers must have a particularized and objective

basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

[9]    Here, Officer Jennings ordered West to stop, in part, based on a tip from an unidentified informant. An anonymous tip alone does not always generate the reasonable suspicion necessary for a valid stop. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997), *modified on reh'g on other grounds* (citing *Alabama v. White*, 496 U.S. 325, 329-30 (1990)). "But under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" *Navarette v. California*, 134 S.Ct. 1683, 1688 (2014) (quoting *White,* 496 U.S. at 327). One circumstance indicating a tip is reliable is when an informant provides information that accurately predicts a suspect's future behavior. *Id.* at 1688 (citing *White*, 496 U.S. at 332). Another circumstance indicating reliability is when an informant claims eyewitness knowledge of alleged wrongdoing. *Id.* at 1689 (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (observing that eyewitness knowledge "lends significant support to the tip's reliability."). Furthermore, when a tip is made "contemporaneous with the observation of criminal activity or made under the stress of excitement caused by a startling event . . . those considerations weigh in favor of the [informant's] veracity . . . ." *Id.* at 1689.

[10]    The facts favorable to the judgment indicate that an unidentified citizen told Officer Jennings that there was a battery in progress across the street, and identified a man in a blue coat and white hat as the alleged batterer. Officer Jennings then looked across the street, heard yelling, and saw a woman on the

ground. He saw a man who fit the description, West, walking away from the woman. Notably, the concerned citizen provided the tip to Officer Jennings having just personally witnessed the alleged criminal activity, weighing in favor of the informant's veracity. *See id.* Officer Jennings was immediately able to corroborate the tip by observing what appeared to be the aftermath of a battery. *See State v. Renzulli*, 958 N.E.2d 1143, 1148 (Ind. 2011) (in evaluating the reliability of a tip, finding notable a lack of elapsed time between law enforcement receiving the tip and finding a vehicle fitting the informant's description in the same described area). Here, too, "there is no evidence to suggest that the citizen concocted a false report, told some 'tall tale' . . . or otherwise acted in a manner which might have placed the citizen's motive or credibility at issue." *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000).

Given that the informant's tip was contemporaneous with witnessing a potential battery, and in light of Officer Jennings's immediate corroborating observations, we find that the State presented sufficient evidence that the order to stop comported with the Fourth Amendment.

## Article 1, Section 11

The text of Article 1, Section 11 of the Indiana Constitution is similar to that of the Fourth Amendment. However, we conduct a separate, independent inquiry focusing on whether the police conduct was "reasonable under the totality of the circumstances." *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008). In evaluating reasonableness, we consider three factors: "1) the degree of

concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[13] Here, Officer Jennings received a tip from an informant personally witnessing a potential battery. The nature of the contemporaneous tip, coupled with Officer Jennings's observations, support the conclusion that Officer Jennings had a high degree of concern that West committed a criminal act. As to the degree of intrusion, although Officer Jennings did not seize West, Officer Jennings testified that he intended to stop West to question him, an investigatory stop that would have imposed a relatively low degree of intrusion on West. Finally, as to the extent of law enforcement needs, Officer Jennings could have first interviewed the alleged victim to verify the tip. However, West was walking away from the scene and could have left the area, making him difficult to later identify. *See United States v. Hensley*, 469 U.S. 221, 229 (observing the practical law enforcement concern that in some circumstances "[r]estraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large.").

[14] We find that the State presented sufficient evidence that Officer Jennings's conduct was reasonable under the totality of the circumstances, thus, the order to stop did not affront West's rights under the Indiana Constitution.

# Conclusion

Officer Jennings's order to stop was constitutionally permissible, and the State presented evidence sufficient to convict West of resisting law enforcement.

Affirmed.

Riley, J., and Barnes, J., concur.